OPINION
Appellant, Aaron Babbitt, appeals his conviction, following a jury trial, by the Ashtabula County Court of Common Pleas for aggravated burglary, escape, and vandalism.
On June 14, 1998, appellant and his wife, Lisa Babbitt began drinking "ice" beer at their home at 719 East 15th Street, in Ashtabula, at about 9 a.m. "Ice" beer has an alcohol content of 5.9%, which is higher than most domestic beers. Lisa testified that she drank at a pace of one beer an hour all day. She testified that appellant drank slowly until noon and then stopped drinking. Between 5 and 6 p.m., he started drinking again but drank much faster, consuming at least six beers in a two-hour period. Lisa testified that between the two of them, they finished twenty-two beers that day. She testified that appellant was "in a rage," "out of control," and that they had been fighting all day. After 9:00 p.m., appellant became angry and smashed a phone in the house when Lisa would not give him a phone number. Shortly thereafter, Lisa left, because she was frightened, and went around the corner to 812 East 14th Street, the home of her mother, Nora Telschow.
Upon arriving at her mother's house, Lisa locked the front and back doors and went to make a phone call in the "dining room/office." While Lisa was on the phone, appellant threw a beer can and a kitchen knife at her through the screen on an open window. He swore at Lisa and told her to return the knife, which she did. Nora Telschow testified that she yelled at appellant, "No, you're not coming in."
Appellant then kicked down the door, breaking the doorjamb and splintering the wood. Once inside, he threw his wife down on a chair and struck her on the leg with the broad side of the knife, leaving a large bruise. Mrs. Telschow entered the room and Lisa fled to some neighbors who called the police. Mrs. Telschow testified that appellant hit her in the face, knocking her glasses off and leaving a cut. Mrs. Telschow left the house and drove away, but not before appellant punctured three of her tires with the knife.
Sergeant Rick Featsent, of the Ashtabula Police, arrived at the Telschow house in response to the call. He noticed that the back door had been "kicked in." He proceeded to the Babbitt house, went inside and found a knife with some blood on it. He also found appellant hiding in the bushes behind the house. He placed appellant under arrest, handcuffed his hands behind his back, and placed him in the rear of Officer Mackey's police car. He testified that appellant was drunk, but not stumbling drunk, and somewhat cooperative.
Officer Mackey testified that as they were driving to the station, appellant worked his handcuffed hands from behind his back, lit a cigarette, started banging his head against the screen separating the back from the front, started screaming that he was going to die, and kicked out one of the side windows. Officer Mackey, who had been travelling at about 60 mph, slammed on the brakes. Appellant, who was trying to climb out of the window, fell out of the window and fled. Officer Mackey followed appellant for three-and-a-half blocks and saw appellant attempt to hide in the back of a pickup truck. Officer Mackey re-apprehended appellant and, with the help of other officers, put him in a restraint. Once in jail, appellant banged his head against his cell's bars until he started bleeding and had to be taken to a hospital.
The case proceeded to a trial before a jury on August 25 and 26, 1998. After the state presented its case to the jury, appellant moved for acquittal under Crim.R. 29(A). The trial court denied his motion. After the denial of his motion, appellant rested his case without presenting any evidence or calling any witnesses. The jury returned a verdict finding appellant guilty of aggravated burglary, escape, and vandalism. The trial court sentenced appellant to seven years of incarceration on the aggravated burglary charge, to be served consecutively with two concurrent one-year terms of incarceration for the other two counts.
Appellant raises the following assignments of error for our review:
 "[1.] The defendant-appellant's constitutional rights to due process under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution were prejudiced by the ineffective assistance of counsel.
 "[2.] The trial court erred to the prejudice of the defendant-appellant in denying the motion for acquittal made pursuant to criminal rule 29(A).
 "[3.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."
We will address appellant's first assignment of error last. In his second assignment of error, appellant asserts that the trial court erred by not granting his motion for acquittal. Appellant asserts that the state failed to prove beyond a reasonable doubt that he had the requisite mens rea to purposely break detention, knowingly cause serious physical harm to property, or trespass. This assignment addresses the sufficiency of the evidence presented.
"Crim.R. 29(A) requires the court, on the defendant's motion, to enter a judgment of acquittal if the evidence is not sufficient to sustain a conviction on the offense. The court may not grant a Crim.R. 29(A) motion if the evidence demonstrates that reasonable minds could reach a different conclusion as to whether each material element of the crime has been proven beyond a reasonable doubt." State v. Salinas (1997),124 Ohio App.3d 379, 389, 706 N.E.2d 381, citing Statev. Bridgeman (1978), 55 Ohio St.2d 261, 381 N.E.2d 184.
"`[T]he test is whether after viewing the probative evidence and the inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence.'" Id., quoting State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717.
Under R.C. 2921.34(A)(1), a person is guilty of escape if, while knowing he is under detention or being reckless in that regard, he purposely breaks or attempts to break the detention. Under R.C. 2909.05, a person is guilty of vandalism if he "knowingly cause[s] physical harm to property that is owned or possessed by another." Appellant argues that he was so intoxicated when he jumped out of the police cruiser that he could only form an intent to commit suicide, not to knowingly break his detention or commit vandalism.
R.C. 2901.22(B) provides that "a person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." If appellant did intend to kill himself by jumping out of a speeding car, he formed an intent to commit all acts leading up to the attempt. Certainly, he needed to kick out the window and knowingly did so. Likewise, he knew that jumping out of a police cruiser would result in his detention being broken. Furthermore, appellant did not explain in his brief how running down the street, away from a pursuing Officer Mackey, then hiding in the bed of a pick-up truck was an attempt at suicide and not escape. Under those circumstances a reasonable trier of fact could conclude beyond a reasonable doubt that appellant was guilty of escape and vandalism.
The aggravated burglary statute, R.C. 2911.11(A), provides that:
 "No person, by force, * * * shall trespass in an occupied structure * * * when another person * * * is present, with purpose to commit in the structure * * * any criminal offense, if any of the following apply:
 "(1) The offender inflicts, or attempts or threatens to inflict physical harm on another;
 "(2) The offender has a deadly weapon or dangerous ordinance on or about the offender's person or under the offender's control."
Appellant claims that appellee did not prove trespass because he had free access to Nora Telschow's house and was never aware that he was denied access to the house. In support of this argument, appellant alleges that Lisa did not testify that Mrs. Telschow denied appellant entrance to her house and Mrs. Telschow's testimony that she denied him access was the result of a leading question.
Though Mrs. Telschow may have permitted appellant to freely enter her house before June 14, 1998, appellant's privilege to enter the house clearly did not extend to forcefully kicking down a locked door or entering with the purpose of attacking Mrs. Telschow and her daughter. Once inside, he struck Lisa with a knife and hit Mrs. Telschow. Under those circumstances, any privilege appellant had to enter or stay in the house was revoked. See State v. Steffen (1987), 31 Ohio St.3d 111, 115,509 N.E.2d 383. This evidence is sufficient for a trier of fact to conclude that appellant trespassed by force and was guilty of aggravated burglary. Appellant's second assignment of error is without merit.
In his third assignment of error, appellant asserts that the verdict of guilty was against the manifest weight of the evidence. Appellant addresses the same arguments in this assignment as he did on the previous assignment. In this assignment, he also attacks the credibility of the prosecution's witnesses.
He first argues that to call his attempt to die "escape and vandalism is an absurdity." He claims that the testimony of the officers about his level of intoxication "assault[s] reason" and that we are left to wonder about the true extent of his irrational behavior while in custody. He secondly argues that the only thing the state proved was that Lisa denied appellant access to a house he had no right to control, which is not a trespass and, therefore, not burglary. Due to the claimed lack of credibility of the witnesses, he concludes that it is a manifest miscarriage of justice for him to be found guilty.
The weight to be given evidence and the credibility of witnesses are determinations to be made by the trier of fact.State v. Thomas (1982), 70 Ohio St.2d 79, 434 N.E.2d 1356. If there were sufficient evidence for the trier of fact to find a defendant guilty beyond a reasonable doubt, a reviewing court should not reverse a guilty verdict based on manifest weight of the evidence. State v. Brown (1988), 38 Ohio St.3d 305,528 N.E.2d 523, paragraph four of the syllabus, certiorari denied (1989), 489 U.S. 1040, 109 S.Ct. 1177. Obviously, the jury chose to believe that the prosecution's witnesses were credible and that the events occurred as described. We will not substitute our own judgment on the credibility of the witnesses for that of the jury. Given that there was sufficient evidence presented to find appellant guilty, we will not reverse the jury's verdict as being against the manifest weight of the evidence. Appellant's third assignment of error is without merit.
In his first assignment of error, appellant asserts that his trial counsel was ineffective by: giving a substandard opening statement; failing to hire an expert to explain the effects of alcohol consumption on appellant's ability to form an intent; failing to object to the admission of police records that showed the cost of fixing the police cruiser's window; failing to file a motion to suppress the admission of the knife recovered from his house; and, failing to object to the question "[a]nd you specifically told him not to enter?" as a leading question.
The claim of ineffective assistance of counsel requires proof that "counsel's performance * * * is proved to have fallen below an objective standard of reasonable representation" and, in addition, prejudice arises from counsel's performance. State v. Bradley
(1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. The establishment of prejudice requires proof "that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Id. at paragraph three of the syllabus. The burden is on appellant to prove ineffectiveness of counsel. State v. Smith
(1985), 17 Ohio St.3d 98, 477 N.E.2d 1128. Trial counsel is strongly presumed to have rendered adequate assistance, and reviewing courts cannot second-guess what could be considered to be a matter of trial strategy. Id.
"The failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel." State v.Holloway (1988), 38 Ohio St.3d 239, 244, 527 N.E.2d 831, 837. "`Objections tend to disrupt the flow of a trial, [and] are considered technical and bothersome by the fact-finder.'" Statev. Campbell (1994), 69 Ohio St.3d 38, 53, 630 N.E.2d 339, quoting Jacobs, Ohio Evidence (1989), at iii-iv.
While it is possible that the knife and the police records could have been excluded as evidence through objections, the admission of this evidence was not unduly prejudicial to appellant. The identity of the knife appellant used to hit his wife was not a vital piece of evidence. Both appellant's wife and her mother testified that he assaulted them, which was sufficient evidence for appellant's conviction. The police records showed the price the police department paid to have the window fixed. The price paid to fix the window was not relevant to whether or not appellant was guilty of vandalism. The prosecution merely needed to prove that appellant knowingly destroyed the window, not the cost to replace it.
While it is true that appellant's trial counsel may have erred by failing to object to the leading question asked Nora Telschow, it was not prejudicial. That appellant did not have permission to forcefully kick down the door was never in issue. Thus, whether Mrs. Telschow's testimony was prompted by a leading question was irrelevant. Furthermore, Mrs. Telschow stated twice during direct examination, prior to the leading question, that she told appellant that he could not come in.
Intoxication can be used to preclude the formation of a specific intent for crimes such as vandalism and escape. SeeState v. Cooey (1989), 46 Ohio St.3d 20, 26, 544 N.E.2d 895, 906. With respect to defendant's contention regarding his counsel's failure to request funds to hire an expert to testify about intoxication, it is well established that counsel's decisions concerning which witnesses to call at trial fall within the realm of trial strategy and tactics and generally will not constitute ineffective assistance of counsel. State v. Clayton (1980),62 Ohio St.2d 45, 49, 402 N.E.2d 1189, 1192. The failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel. State v. Thompson (1987),33 Ohio St.3d 1, 10-11, 514 N.E.2d 407, 417. Appellant has failed to show on record that favorable expert testimony was available or that counsel did not attempt to secure such testimony. Furthermore, given the overwhelming evidence presented against appellant, it is extremely unlikely that calling an expert on intoxication would have had any bearing on the guilty verdict. Thus, appellant has failed to demonstrate the error or its prejudice.
Appellant argues that the opening statement trial counsel gave did the "unreal" and was a "confusing mish-mash" that mortally wounded the defense. He described it as a concession speech and concludes that appellant "would have been better off with no opening — or no attorney." The opening statement given was as follows:
 "May it please the court, Mr. Klepatz, ladies and gentlemen of the jury, these are what are called our opening remarks and basically should be what we think the evidence will show. But we're going to tell you these remarks are going to be directed to what we think the evidence will not show. Let me tell you what — you don't know what the definitions are yet — but if there is no element of knowingly, there's no vandalism. If there is no element of recklessness and knowingly, there is no escape. And if there is no element of trespass, there is no aggravated burglary. Something else maybe, but there is no aggravated burglary."
 "Ladies and gentlemen, we would ask you to listen to all the evidence. Listen to all the testimony. Receive the evidence. And we would ask you then when you have the instructions of the court as to what the elements are and how to apply them, we would then ask you to apply the elements of the court's instructions and to follow your oath as jurors and return a verdict of not guilty of each and every charge. Thank you very much."
While trial counsel's opening statement was brief, it was also very concise and outlined his defense strategy that the prosecution could not prove its case, quite similar to the theory advanced by appellate counsel. The amount of detail used in the opening statement is clearly a matter of trial strategy that we will not second-guess. Appellant argues that the opening statement was substandard because it told what the evidence would not show, rather than what the evidence would show. Trial counsel's strategy makes perfect sense when considering that, in a criminal trial, he was not required to prove anything; therefore, it was reasonable to stress the burden of proof was exclusively on the prosecutor. We cannot conclude that appellant's counsel breached his professional duties towards appellant or that his level of performance was substandard. Appellant's first assignment of error is without merit.
Based on the foregoing considerations, we affirm the judgment of the trial court.
 __________________________________________ JUDGE ROBERT A. NADER
CHRISTLEY, P.J., O'NEILL, J., concur.